Jeremy J. Osher (State Bar No. 192109)
josher@ bollaw.com
Aaron M. Gladstein (State Bar No. 266287)
agladstein@bollaw.com
**BOREN, OSHER & LUFTMAN, LLP**
222 N. Sepulveda Blvd., Suite 2222
El Segundo, CA 90245
Telephone:   (310) 322-2220
Facsimile:    (310) 322-2228

Attorneys for Defendant
MICHAEL ROSENBLATT

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT LAUTER, | ) **CASE NO.:  2:15-cv-08481-DDP (KS)** |
|  | ) |
| Plaintiff, | ) **DEFENDANT MICHAEL** |
|  | ) **ROSENBLATT'S** |
| v. | ) **MEMORANDUM OF POINTS** |
|  | ) **AND AUTHORITIES IN** |
| MICHAEL       ROSENBLATT; | ) **SUPPORT OF MOTION TO** |
| ECHO           BRIDGE | ) **DISMISS SECOND AMENDED** |
| ENTERTAINMENT,     LLC; | ) **COMPLAINT OF PLAINTIFF** |
| PLATINUM  DISC, LLC; ECHO | ) **BRETT LAUTER PURSUANT TO** |
| BRIDGE          HOME | ) **FED. R. CIV. P. 12(b)(6) OR, IN** |
| ENTERTAINMENT; and DOES 1 | ) **THE ALTERNATIVE, MOTION** |
| through 10, inclusive, | ) **TO STRIKE PORTIONS OF** |
|  | ) **SECOND AMENDED** |
| Defendants. | ) **COMPLAINT PURSUANT TO** |
|  | ) **FED. R. CIV. P. 12(f)(2)** |
|  | ) |
|  | ) Date:        June 19, 2017 |
|  | ) Time:        10:00 a.m. |
|  | ) Courtroom:  9C, Ninth Floor |
| _____ | ) Judge:       Hon. Dean D. Pregerson |

# Table of Contents

I.    INTRODUCTION....................................................................................1

II.   OVERVIEW OF REVELANT FACTS.........................................................3

III.  LEGAL ARGUMENT.............................................................................5

    A. Lauter's Second Amended Complaint Does Not Adequately
       Plead Alter Ego Liability...............................................................6

    B. Lauter's Second Amended Complaint Does Not Adequately
       Plead Allegations to Impute Personal Liability To Rosenblatt.............9

        1. Lauter's Claim for Interference With Prospective
           Economic Advantage.............................................................10

        2. Lauter's Claims for Copyright Infringement............................11

        3. Lauter's Claim for Unfair Competition (Cal. Bus. & Prof.
           Code § 17200).....................................................................13

        4. Lauter's Claim for Unfair Competition in Violation of 15
           U.S.C. § 1125(a) [Lanham Act § 43(a)]...............................13

    C. Lauter Fails to State A Claim Against Rosenblatt For
       Interference With Prospective Economic Advantage....................15

    D. Lauter's Claim For Unfair Competition Pursuant to
       Business And Professions Code Section 17200 Is Preempted
       By The Federal Copyright Act........................................................17

    E. Lauter Fails To State A Claim Against Rosenblatt
       For Unfair Competition In Violation Of The Lanham Act...............20

    F. Any References To Injunctive Relief Ought To Be Stricken
       From The Second Amended Complaint..........................................21

IV.   CONCLUSION...................................................................................23

i

# Table of Authorities

**<u>Federal Cases</u>**

*Ashcroft v. Iqbal*
    (2009) 556 U.S. 662 ................................................................5,10

*Bell Atl. Corp. v. Twombly*
    (2007) 550 U.S. 544 ........................................................ 5, 11, 18

*Calvert v. Huckins*
    (E.D. Cal. 1995) 875 F. Supp. 674 .........................................7, 8

*Cambridge Electronics Corp. v. MGA Electronics, Inc.*
(C.D. Cal. 2004) 227 F.R.D. 313 ................................................9

*Currency Conversion Fee Antitrust Litigation*
    (S.D.N.Y. 2003) 265 F.Supp.2d 385, 426 ...............................7

*Fantasy, Inc. v. Fogerty*
    (9th Cir. 1993) 984 F.2d 1524 .............................................24

*Gerritsen v. Warner Bros. Entertainment Inc.*
    (C.D. Cal. 2015) 116 F.Supp.3d 1104 ....................................7

*Hokama v. E.F. Hutton & Co., Inc.*
    (C.D. Cal. 1983) 566 F.Supp. 636.........................................8

*Kingdom 5–KR–41, Ltd. v. Star Cruises PLC*
    (S.D.N.Y. Mar. 20, 2002) No. 01 Civ. 2946(AGS) 2002 WL 432390 .................7

*Kodadek v. MTV Networks, Inc.*
    (9th Cir. 1998) 152 F.3d 1209 ............................................19

*Lions Gate Entm't, Inc. v. TD Ameritrade Servs. Co., Inc.*
    (C.D. Cal. 2016)170 F.Supp.3d 1249...................................20

*Moss v. U.S. Secret Serv.*
    (9th Cir. 2009) 572 F.3d 962............................................22

*Motown Record Corp. v. George A. Hormel & Co.*
    (C.D. Cal. 1987) 657 F.Supp. 1236......................................20

*/ / /*

ii

*Navarro v. Block*

  (9th Cir. 2001) 250 F.3d 729 ...................................................................5

*O'Connor v. Uber Technologies, Inc.*

  2013 WL 6354534 at *18 (N.D. Cal. Dec. 5, 2013) ................... 12, 14

*Sprewell v. Golden State Warriors*

  (9th Cir. 2001) 266 F.3d 979 ...............................................................23

*Wady v. Provident Life and Accident Ins. Co. of America*

  (C.D. Cal. 2002) 216 F.Supp.2d 1060.................................................7

*Whittlestone, Inc. v. Handi-Craft, Co.*

  (9th Cir. 2010) 618 F.3d 970 ...............................................................24

**State Cases**

*Crown Imports, LLC v. Superior Court*

  (2014) 223 Cal.App.4th 1395 ...............................................................16

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*

  (1995) 11 Cal.4th 376 ...........................................................................17

*Frances T. v. Village Green Owners Assn.*

  (1986) 42 Cal.3d 490 ................................................ 10, 11, 13, 15,24

*Khoury v. Maly's of California, Inc.*

  (1993) 14 Cal.App.4th 612 ...................................................................17

*Korea Supply Co. v. Lockheed Martin Corp.*

  (2003) 29 Cal.4th 1134 .........................................................................18

*Sonora Diamond v. Superior Court*

  (2000) 83 Cal.App.4th 523 .....................................................................8

*Westside Ctr. Assoc. v. Safeway Stores 23, Inc.*

  (1996) 42 Cal.App.4th 507 ...................................................................18

*Youst v. Longo*

  (1987) 43 Cal.3d 64 ..............................................................................18

*/ / /*

*/ / /*

## Federal Statutes

15 U.S.C. § 1125(a) ................................................................ 13, 24

17 U.S.C. § 102 ...........................................................................18

17 U.S.C. § 103 ...........................................................................18

17 U.S.C. § 502 ...........................................................................22

17 U.S.C. § 503 ...........................................................................22

## State Statutes

Cal. Bus. & Prof. Code § 17200 ......................................... 3, 13, 17, 24

Cal. Bus. & Prof. Code § 17203 ...................................................22

## Federal Rules

Fed. R. Civ. P. 12(b) .....................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Despite Plaintiff Brett Lauter's ("Lauter") attempt to over-complicate this dispute by way of his circuitous and verbose Second Amended Complaint ("SAC"), at least with respect to Defendant Michael Rosenblatt ("Rosenblatt"), this case is, at its essence, very straightforward.  Lauter, who runs a business acquiring and distributing the rights to motion pictures, entered into a Multi Picture Deal/Acquisition of Rights Deal (hereafter the "Agreement") with Defendant Echo Bridge Entertainment, Inc. ("EBE"), at which Defendant Michael Rosenblatt ("Rosenblatt") formerly held numerous executive roles, including Chairman, President and CEO.[1]  Rosenblatt executed the Agreement on behalf of EBE in his capacity as CEO.

The Agreement purports to have granted EBE a conditional license to distribute ten films in North America and, in return, Lauter would receive 80% of revenues generated by the distributions.  Lauter was purportedly not paid certain revenues owed, and also claims that Defendants distributed content to which they had/have no rights.  As a result, Lauter filed his Complaint, and subsequently a First Amended Complaint, alleging a myriad of claims against EBE, Platinum Disc, LLC, Echo Bridge Home Entertainment (collectively the "EBE Entities"[2]), Echo Bridge Acquisition Corp. and Rosenblatt.  Then, seventeen (17) months after filing his original Complaint, and five (5) months after filing his First Amended Complaint, Lauter sought leave from the Court to file his subject SAC to assert additional claims against the existing entity Defendants, as well as to add the

---

[1]  Contrary to Lauter's allegation in the SAC, Rosenblatt was never the majority shareholder of Echo Bridge.

[2]  This reference is made solely for the Court's convenience in that the SAC also identifies these three entities as the "EBE Entities."  This is not intended to be a statement regarding whether these entities are actually connected in any manner.

1

following Defendants: BHC Interim Funding II, L.P., and BHC Interim Funding Management, LLC.

Indeed, since the inception of this litigation in October 2015, and despite the SAC being his third iteration of claims, nothing has changed with respect to the baselessness of Lauter's attempts to impose personal liability upon Rosenblatt.

First, Lauter attempts to pierce EME's corporate veil by pleading wholly-conclusory allegations with respect to Rosenblatt, *i.e.*, that Rosenblatt occupied several executive positions at once, that EBE was "inadequately capitalized," and that Rosenblatt engaged in some unspecified "tortious conduct." These scant allegations are insufficient to impose alter ego liability upon Rosenblatt for EBE's purported wrongdoings, especially when considering that alter ego is a particularly extreme remedy.

Second, Lauter's additional bases for asserting personal liability against Rosenblatt revolve around the fact that Rosenblatt purportedly "supervised" or "had the authority to supervise" employees of the EBE Entities, and that Rosenblatt stood to profit from these purported tortious activities. It seems axiomatic that, in his role as President and CEO of EBE, Rosenblatt supervised employees and stood to profit from EBE's business activities. However, the fact that Rosenblatt served as an executive of EBE during the time of these purported tortious activities does not, by itself, give rise to his personal liability. Lauter does not sufficiently plead that Rosenblatt actively participated in the alleged tortious conduct. Instead, Lauter pleads factually-devoid allegations in an attempt to loop Rosenblatt into this matter in which he does not belong. As such, and as set forth more fully below, all of Lauter's claims against Rosenblatt must fail.

Third, if the Court does not dismiss Lauter's claims altogether on this basis, Lauter's interference with prospective economic advantage claim likewise fails because the damages sought by way of that claim are explicitly prohibited by the

Agreement—the same Agreement of which Lauter dubiously seeks to take advantage by asserting a breach of contract claim, while also simultaneously asserting throughout his SAC that the Agreement was "abandoned" and "rescinded."   Moreover, this claim is purely duplicative of Lauter's claims for breach of contract and copyright infringement, and essentially amounts to a lackadaisical recasting of both.  Finally, Lauter fails to plead that Rosenblatt's purported conduct interfered with any specific existing relationship; instead asserting entirely speculative relationships that "probably" would have benefitted Lauter.  For all these reasons, this claim must fail.

Fourth, Lauter's unfair competition claims do not fare any better:  Lauter's Bus. & Prof. Code § 17200 claim is fatally deficient because it is preempted by the federal Copyright Act.  Moreover, Lauter's unfair competition claim under 15 U.S.C. 1125 (the Lanham Act) fails as against Rosenblatt because it is based solely on a wholly-conclusory and illogical deduction of fact; one which the Court is not required to accept as true, regardless of this matter being in the pleadings stage.

Put bluntly, Rosenblatt does not belong in this case.  As explained in detail below, Lauter's claims against Rosenblatt are entirely baseless, and should be dismissed.  In the alternative, if Lauter's SAC against Rosenblatt (or any portions thereof) survives, then the Court should strike all references to Lauter seeking injunctive relief against Rosenblatt, as he is prohibited from doing so pursuant to the explicit language of the subject Agreement.

## II.   <u>OVERVIEW OF RELEVANT FACTS</u>

Brett Lauter is the sole proprietor of Pan Global Entertainment, a business which acquires and distributes the rights to media content, particularly motion pictures.  SAC, ¶ 18.  Defendant EBE is an independent content company which acquires and distributes media content worldwide.  Declaration of Aaron M. Gladstein ("Gladstein Decl."), ¶ 3.  Rosenblatt served in various roles for EBE—

DEFENDANT MICHAEL ROSENBLATT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

most  notably CEO beginning in 2007—from the time of EBE's incorporation in 2003 until June 1, 2015 at which time he resigned at the request of EBE.  Gladstein Decl., ¶ 4.

On or about June 15, 2011, EBE and Lauter entered into the Agreement with respect to ten films (the "Films") for which Lauter has the exclusive North America distribution rights.  SAC, ¶ 23.  The Agreement, which Rosenblatt executed on behalf of EBE *in his capacity as CEO*, contains the following relevant terms: payment to Lauter of 80% of revenues generated from the distribution of the Films; quarterly royalty reports to Lauter within 60 days of the end of each quarter; and royalty payments to Lauter within 60 days of the end of each quarter.  SAC, ¶ 25(a)-(c).

By way of his SAC, Lauter raises various allegations regarding EBE's purported failure to timely pay, or pay at all certain royalties owed to Lauter pursuant to the Agreement.  SAC, ¶¶ 33-41.  Based on a purported past due amount of royalties totaling $18,183.56, Lauter filed two small claims actions against EBE and Defendant Echo Bridge Home Entertainment ("EBHE"), and received two default judgments therefrom for the total amount, plus $180 in costs.  SAC, ¶¶ 42-44.

Lauter now makes the improper legal conclusion that based upon these two default judgments, the purported insolvency of the EBE Entities, and their refusal to communicate with Lauter, the EBE Entities "abandon[ed] … the Agreement" and therefore "terminated their rights under the Agreement."  SAC, ¶ 50.  It is on the basis of this purported abandonment and termination of the Agreement that Lauter now alleges that all continuing distribution of the Films by Defendants is improper and a violation of Lauter's purported copyrights and trademarks in the Films.  Moreover, Lauter makes unfounded claims regarding EBE purportedly

4

DEFENDANT MICHAEL ROSENBLATT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

issuing "false royalty statements" and underpaying the royalty payments actually owed Lauter, all under the supervision of Rosenblatt.  SAC, ¶¶ 60-72.

Regardless of the validity of the claims that Lauter makes against the various entity Defendants (including recently-added BHC Interim Funding II, L.P. and BHC Interim Funding Management, LLC), it is undisputed that, at all times relevant to the allegations asserted against Rosenblatt in the SAC, Rosenblatt was acting in his capacity as the Chairman/President/CEO of EBE.  Rosenblatt denies having personally directed or participated in the alleged tortious conduct to a level sufficient to impute personal liability to him.  In fact, Lauter's scant allegations do not even rise to a level sufficient to impose such personal liability upon Rosenblatt.

For this reason and, as set forth more fully below, Rosenblatt respectfully requests that the Court dismiss Lauter's claims against him in their entirety.

## III.   LEGAL ARGUMENT

A court should dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 932 (9th Cir. 2001).  To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

Litigants are expected to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Id*.

/ / /

DEFENDANT MICHAEL ROSENBLATT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

1    / / /

2    / / /

3    **G. <u>Lauter's Second Amended Complaint Does Not Adequately Plead</u>**
       **<u>Alter Ego Liability.</u>**

5    Lauter's SAC pleads wholly-conclusory and factually-deficient allegations

6    with regard to Rosenblatt's purported alter ego liability.  Lauter relies, at least in

7    part, on these scant allegations, in alleging that Rosenblatt is personally liable for

8    the tortious activities pled in the SAC against various entity Defendants.

9    Under the section within the SAC entitled "**<u>Alter Ego Liability</u>**," Lauter

10   specifically pleads with regard to Rosenblatt that "Rosenblatt disregarded

11   corporate formalities" by simultaneously serving as "managing partner, Member,

12   Chairman, CEO and President" of the EBE Entities.  SAC, ¶ 114.  Moreover,

13   Lauter summarily claims that "Rosenblatt … used the corporate entity unjustly to

14   circumvent a statute or otherwise frustrate a statutory policy."  SAC, ¶ 120.

15   Finally, Lauter alleges that the Court should hold Rosenblatt personally liable

16   because "the [EBE Entities] were inadequately capitalized, have since been

17   liquidated, and have conveyed all their assets" and "Rosenblatt engaged in tortious

18   conduct."  SAC, ¶ 121.

19   Lauter's allegations, as they relate to Rosenblatt, fall well short of the

20   specificity required to plead facts of alter ego liability.  Indeed, a careful review of

21   these allegations reveals that Rosenblatt does not belong in this case at all as the

22   allegations only highlight that any purported wrongdoing was on the part of the

23   various entity Defendants.

24   Federal law is clear that alter ego is an extreme remedy which is sparingly

25   used.  *See Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) ("[there is a]

26   general presumption in favor of respecting the corporate entity.  Disregarding the

27   corporate entity is recognized as an extreme remedy, and "[c]ourts will pierce the

28

DEFENDANT MICHAEL ROSENBLATT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

corporate veil only in exceptional circumstances"). In *Gerritsen v. Warner Bros. Entertainment Inc.*, 116 F.Supp.3d 1104 (C.D. Cal. 2015), this Court reiterated the requirement that a plaintiff specifically plead facts to show alter ego liability:

> Conclusory allegations of "alter ego" status are insufficient to state a claim. Rather, **a plaintiff must allege** s**pecific facts supporting both of the necessary elements**. *In re Currency Conversion Fee Antitrust Litigation,* 265 F.Supp.2d 385, 426 (S.D.N.Y. 2003) ("These purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard"); *Wady v. Provident Life and Accident Ins. Co. of America,* 216 F.Supp.2d 1060, 1067 (C.D. Cal. 2002) ("More pertinent for purposes of the current discussion, none [of the allegations] contains any reference to UnumProvident being the alter ego of Provident. None alleges that UnumProvident treats the assets of Provident as its own, that it commingles funds with Provident, that it controls the finances of Provident, that it shares officers or directors with Provident, that Provident is undercapitalized, or that the separateness of the subsidiary has ceased"); *Kingdom 5–KR–41, Ltd. v. Star Cruises PLC,* No. 01 Civ. 2946(AGS), 2002 WL 432390, (S.D.N.Y. Mar. 20, 2002) ("**[I]n order to overcome the presumption of separateness afforded to related corporations, [plaintiff] is required to plead more specific facts supporting its claims, not mere conclusory allegations**"); *Hokama v. E.F. Hutton & Co., Inc.,* 566 F.Supp. 636, 647 (C.D. Cal. 1983) ("Defendants further argue that plaintiffs cannot circumvent the requirements for secondary liability by blandly alleging that Madgett, Consolidated, and Frane are 'alter egos' of other defendants accused of committing primary violations. This point is well taken.... If plaintiffs wish to pursue such a theory of liability, they must allege the elements of the doctrine. Conclusory allegations of alter ego status such as those made in the present complaint are not sufficient"). (Emphasis added.)

In direct contrast to what is actually required of a plaintiff in pleading alter ego liability—*e.g.*, specific factual allegations—Lauter's SAC contains only failed legal conclusions. First, Lauter claims that "Rosenblatt disregarded corporate formalities in that he occupied virtually all corporate offices simultaneously." SAC, ¶ 114. Interestingly, Lauter fails to plead what "corporate formalities"

7

Rosenblatt ran afoul of by occupying numerous executive positions at once. This is because no such law or "formalities" barring an individual from simultaneously occupying various positions exists. *See Sonora Diamond v. Superior Court*, 83 Cal.App.4[th] 523, 548-49 (2000) ("It is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary"); *Calvert,* 875 F.Supp. at 678-79 ("Courts have repeatedly held" that "ownership interests … and … interlocking directors and officers" "do not justify piercing the corporate veil").

Lauter's further allegation that Rosenblatt should be subjected to alter ego liability because the EBE Entities are "inadequately capitalized" does not fare any better. Importantly, in refusing to impose alter ego liability, this Court has recognized that "courts have cautioned against relying too heavily in isolation on the factors of inadequate capitalization or concentration of ownership and control." *Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 326 (C.D. Cal. 2004).

Finally, in an effort to overcome his factually-devoid allegations, Lauter pleads in conclusory fashion that "Rosenblatt … used the corporate entity unjustly to circumvent a statute or otherwise frustrate a statutory policy." SAC, ¶ 120. The SAC does not identify the "corporate entity" to which Lauter is alluding. Moreover, and most critical to Lauter's claims, in an attempt to expound upon the purported activity(ies) undertaken by Rosenblatt to "unjustly circumvent a statute or otherwise frustrate a statutory purpose," Lauter pleads the following: "EBE, controlled by Rosenblatt … engaged in rampant copyright and trademark infringement in violation of federal statutes and when faced with a [sic] Lauter's lawsuit based on these violations simply chose to close up shop and liquidate the EBE [E]ntities." This is fatally-flawed as to Rosenblatt for a number of reasons:

First, rather than asserting some *overt* conduct on the part of Rosenblatt sufficient to impose personal liability, Lauter alleges that simply by "control[ing]" EBE, Rosenblatt is somehow liable for the purported tortious activities of that entity.  As discussed in the section immediately below, that is not the law in California.  *See, e.g., Frances T. v. Village Green Owners Assn.* 42 Cal.3d 490 (1986).  Second, with regard to EBE's decision to purportedly "close up shop," these activities, as pled in the SAC, all took place from September through December 2015.  Rosenblatt resigned from EBE on June 1, 2015.  *See* Gladstein Decl., ¶ 4.  As such, without even opining on whether the activities that Lauter pleads are sufficient to impose alter ego liability, Rosenblatt certainly is not responsible for activities undertaken by the corporation *after* his resignation—especially when the relevant legal standard requires some overt participation on the part of the executive.  *Frances T.,* 42 Cal.3d 490.

In sum, while Lauter may have pled conclusory allegations which are *consistent* with alter ego liability, i.e., that Rosenblatt occupied several positions of authority and that EBE was "inadequately capitalized," Lauter's SAC falls well short of pleading facts which demonstrate he is actually entitled to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' [Citation]").

## H. Lauter's Second Amended Complaint Does Not Adequately Plead Allegations to Impute Personal Liability To Rosenblatt.

With regard to Lauter's attempts to impute personal liability to Rosenblatt on top of his alter ego theories, the SAC states in a conclusory fashion that "contemporaneously with the corporate liquidations [sic], Rosenblatt engaged in tortious conduct against Plaintiff."  SAC, ¶ 121.

9

"It is well settled that corporate directors cannot be held *vicariously* liable for the corporation's torts in which they do not participate. Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise." *Frances T. v. Village Green Owners Assn.* 42 Cal.3d 490, 503 (1986).

Here, Lauter fails to sufficiently plead that Rosenblatt's behavior rose to the level of requisite *active* participation necessary to impose personal liability upon him. These claims amount to nothing more than an improper "formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is clear that Rosenblatt does not belong in this case and Lauter should not be given a free pass in this regard merely because this case is at the pleadings stage and/or because Lauter is a *pro se* litigant.

## 5. Lauter's Claim for Interference With Prospective Economic Advantage.

In Lauter's Fifth Cause of Action for Interference with Prospective Economic Advantage, Lauter does not even attempt to individually distinguish Rosenblatt's purported liability from that of the EBE Entities or allege how Rosenblatt *personally participated* in any of the purportedly tortious activities. Instead, Lauter alleges, in a conclusory manner, that "Defendants EBE, Platinum, EBHE, and Rosenblatt violated the standards and practices of the film industry in continuing to use, copy and distribute Lauter's films and associated trademarks, and in continuing to collect revenue from Lauter's films from third party licensees, after the Agreement was rescinded." SAC, ¶ 201. This is purely a thinly-veiled regurgitation of Lauter's claims for Breach of Contract, Equitable Accounting, and Relief Based Upon Rescission of Contract filed against the various entity Defendants. Rosenblatt's only involvement in this regard was executing and entering into the Agreement on behalf of EBE in his corporate capacity as CEO.

10

Lauter has failed to allege any overt conduct on the part of Rosenblatt beyond that of a CEO performing the normal duty of signing a contract to bind the corporate entity.

### 6. **Lauter's Claims for Copyright Infringement.**

Lauter's various claims against Rosenblatt for Copyright Infringement are similarly deficient. Lauter claims that "Defendants EBE, Platinum, EBHE and Rosenblatt, acting individually and in concert," committed copyright infringement by "continuing to use, copy, distribute, publicly display and perform the films," and "advertising and selling free digital copies of the films ... while failing to make required payments **under the Agreement**." SAC, ¶ 216(a). (Emphasis added). Moreover, Lauter claims that the Defendants "submitted falsified royalty statements" and "[w]ithout any authority, advertis[ed] and [sold] free digital copies of the films on various business to consumer websites." SAC, ¶ 216(c)-(d). Again, these claims amount to nothing more than varied recitations of Lauter's Breach of Contract, Equitable Accounting, and Relief Based Upon Rescission of Contract claims.

In fact, Lauter's effort to elaborate on Rosenblatt's purported personal liability in the Sixth Cause of Action actually has the opposite effect. Lauter's first two attempts in this respect are easily disregarded as he merely lists Rosenblatt's corporate titles with the entity Defendants and then admits that Rosenblatt "signed the Agreement with Lauter." SAC, ¶ 220(a)-(b). *See* e.g., *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6354534 at *18 (N.D. Cal. Dec. 5, 2013) (dismissing claims for tortious interference with prospective economic advantage and unfair competition on the basis that Plaintiff's Complaint, by merely "identifying [the corporate officers'] roles in the corporation and alleging that they were 'responsible' for pay practices and employment policies does not make it plausible

that they were personally liable, any more so than it would any officer responsible for the torts allegedly committed by their corporation).

Lauter then pleads that Rosenblatt "was in communication with Lauter and was apprised of the withholding of the royalty statements and payments. SAC, ¶ 220(c). It is manifest that the CEO of a company would be in "communication" with a vendor and would also be apprised of the day-to-day business of his company. Such self-evident realities are not sufficient to show that the CEO has "in some meaningful sense actively participate[d] in the wrongful conduct." *Frances T.,* 42 Cal.3d at 503-504.

Finally, Lauter claims that Rosenblatt "supervised the employees who issued the false royalty statements" and "who packaged, sold and delivered the free digital copies;" "had the authority to supervise the employees who issued the statements and payments" and "he failed to act" to prevent purported abuses of the same. SAC, ¶ 220(d)-(h). Rosenblatt is aware of no authority supporting the proposition that a CEO supervising or *having* the authority to supervise employees is tantamount to the CEO actually overtly authorizing or directing certain activities by those employees. Rather, this is yet another self-evident statement by Lauter conceptualizing the *normal* relationship between a supervisor and an employee, *i.e.,* the supervisor *supervises* his employees. Moreover, Rosenblatt's purported omissions, *i.e.,* "fail[ing] to act," do not equate to the requisite overt actions needed for Lauter to properly plead that Rosenblatt is personally liable for the EBE Entities' purported tortious conduct. Based on the foregoing, Lauter fails to state a claim individually against Rosenblatt for copyright infringement.[3]

---

[3]  Rosenblatt anticipates Lauter will argue that in its Order Granting Plaintiff's Motion to file his *First* Amended Complaint (the "Order"), entered on September 29, 2016 (Dkt. # 43), the Court already ruled that Lauter may maintain a cause of action against Rosenblatt for Copyright Infringement. However, putting aside the fact that this Order spoke to a *previous* iteration of Lauter's claims, as the Court

### 7. Lauter's Claim for Unfair Competition (Cal. Bus. & Prof. Code § 17200).

Much like Lauter's claims for copyright infringement, Lauter's claim for Unfair Competition under Business and Professions Code section 17200 attempts to pin personal liability on Rosenblatt based largely on the mere facts that Rosenblatt executed the Agreement on behalf of EBE and that he occupied a supervisory role at EBE. *See O'Connor*, 2013 WL 6354534 at *18.

In fact, with respect to the allegations against Rosenblatt in this 17200 claim, the *only* substantive differences from the copyright claims are the following two scant allegations: "[Rosenblatt] **had the authority** to issue the withheld statements and payments and prevent continued distribution … and he derived a financial benefit from the transactions pertaining to Lauter's films." SAC, ¶ 251 (compare against SAC, ¶¶ 220-221).

These allegations are more form over function in that, rather than actually changing the tune of the SAC with regard to imposing personal liability upon Rosenblatt, they simply repeat the same theme in a slightly different way. These allegations do nothing to plead anything remotely sufficient to argue that Rosenblatt personally participated in the allegedly tortious conduct of the entity Defendants and/or their employees in violation of section 17200.

### 8. Lauter's Claim for Unfair Competition in Violation of 15 U.S.C. § 1125(a) [Lanham Act § 43(a)].

Much like Lauter's other claims, his claim against Rosenblatt for violation of the Lanham Act is premised on Rosenblatt's purported *failure* to do something; rather than an overt action or act of participation by Rosenblatt.

---

specifically noted on page 8 of the Order, "…it is unclear whether those [copyright infringement] factual allegations are sufficient to withstand a Rule 12(b)(6) challenge …." In other words, the Court did not resolve this issue as Lauter might suggest.

As it concerns Rosenblatt, Lauter pleads that "Defendant EBE's rights to use the films and associated trademarks terminated on 2/28/2014, yet … Rosenblatt, contrary to the standards and practices of the film industry, failed to inform the third party licensees of such termination while continuing to solicit and receive revenues from their continued unauthorized licensing of the trademarks.  SAC, ¶ 262.  First, the sufficiency of Lauter's allegation rests upon his self-serving and unsubstantiated legal conclusion that the Agreement between EBE and Lauter terminated.  This is improper as a matter of law.

Moreover, just like Lauter's claim for Copyright Infringement, the instant claim attempts to impose personal liability on Rosenblatt for his purported omissions—his "fail[ure] to inform".  *Ibid*.  This is not sufficient to rise to the requisite level of "active participation" required by the law.  *See Frances T.,* 42 Cal.3d at 503-504.   Nor is Lauter's general allegation that "[t]he third party licensees … have been led to believe by Defendants EBE, Platinum, EBHE and Rosenblatt that they are dealing with Lauter's authorized representative."  SAC, ¶ 263.   Missing from this allegation is the "how," as in how did Rosenblatt personally participate in this purported conduct (aside from simply serving in his capacity as the CEO of EBE) to the degree that his conduct/overt actions purportedly led these licensees to believe that they were dealing with Lauter's authorized representative?  Lauter's claim is devoid of requisite specificity in this regard.

Based on all of the foregoing, Rosenblatt respectfully requests that the Court dismiss all of Lauter's claims against Rosenblatt for failure to properly plead allegations sufficient to impute personal liability to Rosenblatt.  In the alternative, if the Court is unwilling to dismiss all claims on that basis, Rosenblatt respectfully requests that certain of Lauter's claims be dismissed on other grounds as set forth below.

## I.  Lauter Fails to State A Claim Against Rosenblatt For Interference With Prospective Economic Advantage.

"The elements of a claim of interference with … prospective economic advantage are: (1) an economic relationship between plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to plaintiff proximately caused by the acts of the defendant." *Crown Imports, LLC v. Superior Court* 223 Cal.App.4[th] 1395, 1404 (2014) (citations omitted).

Pursuant to the Agreement, which is attached to Lauter's SAC, and thereby incorporated therein by reference, the contracting parties specifically agreed to a Limitation of Liability precluding either from seeking certain damages, "INCLUDING LOSS OF BUSINESS, REVENUE, PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE."  *See* Agreement, ¶ 13.d.  Given that the parties are precluded from seeking damages based on "loss of economic advantage," Lauter is prohibited from pleading that he suffered any economic harm; one of the *necessary elements* of this cause of action.

Further, "a breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business."  *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4[th] 612, 618 (1993) (no tortious interference claim where the effect on appellant's customers and alleged damage to appellant's business were simply consequences of breach of contract).  Here, the majority of the allegations of Rosenblatt's wrongful acts are the same as those alleged by Lauter against the entity Defendants in his breach of contract claim.  More specifically, in Paragraph 201, Lauter pleads that "Defendants EBE, Platinum, EBHE, and Rosenblatt violated the standards and practices of the film industry in

1    continuing to use, copy and distribute Lauter's films and associated trademarks,

2    and in continuing to collect revenue from Lauter's films from third party licensees,

3    after the Agreement was rescinded." SAC, ¶ 201. In addition, Lauter alleges that

4    "Defendants EBE and Rosenblatt licensed the films to the third party licensees

5    which prevented Lauter from dealing with them directly with respect to the ten

6    licensed films." SAC, ¶ 204(a). These allegations are merely slightly-varied

7    recitations of the same allegations of "unexcused and unjustified breaches" from

8    the Breach of Contract Cause of Action against EBE as pled in Paragraph 127,

9    subsections (d) through (g).

10      Moreover, as an additional element of a tort claim for intentional

11    interference with prospective economic advantage, courts require that "the alleged

12    interference must have been wrongful by some measure beyond the fact of the

13    interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* 11 Cal.4th

14    376, 392-393 (1995). This is understood as an act "proscribed by some

15    constitutional, statutory, regulatory, common law, or other determinable legal

16    standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153

17    (2003). With respect to Rosenblatt's purported wrongful conduct, Lauter pleads,

18    in an incredibly-vague manner and in what seems to be an effort merely to ensure

19    he is hitting the "buzz words" from the elements of the cause of action: "…

20    Rosenblatt's independently wrongful acts include trademark infringement, as well

21    as violation of the established standards of the film industry." SAC, ¶ 202. Not

22    surprisingly, Lauter fails to elaborate, with even an iota of specificity, as to the

23    "trademark infringement" in which Rosenblatt engaged, or to even *identify* the

24    "established standards of the film industry," let alone how Rosenblatt ran afoul of

25    the same. These factually-deficient conclusions are not sufficient, even at the

26    pleadings stage. This amounts to nothing more than an improper "formulaic

27    recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

28

Finally, Lauter failed to allege that Rosenblatt interfered with a specific existing relationship, rather than the possible formation of one in the future. *See Westside Ctr. Assoc. v. Safeway Stores 23, Inc.,* 42 Cal.App.4[th] 507, 527 (1996) (tortious interference claim failed where the economic relationship was purely hypothetical). It must be "reasonably probably that the lost economic advantage would have been realized but for the defendant's interference." *Youst v. Longo,* 43 Cal.3d 64, 71 (1987). Lauter does not identify a single existing economic relationship with which Rosenblatt interfered. To the contrary, Lauter's Fifth Cause of Action is rife with insufficient conjectures, including, but not limited to:

> "It follow [sic] logically that if the third party licensees licensed Lauter's ten films from EBE, that they **would have also been willing to** license the same ten films directly from Lauter."
> SAC, ¶ 200 (emphasis added).

> "Had defendants not licensed the films to the third party licensees, **it is likely that Lauter would have done so** and received at least the same amount of revenue that defendants received."
> SAC, ¶ 204(b) (emphasis added).

This speculative language makes it clear that any economic relationships between Lauter and these third party licensees were purely hypothetical and, essentially, mere figments of Lauter's imagination concocted for purposes of adding weight to his already-tenuous personal liability claims against Rosenblatt.

## J. **Lauter's Claim For Unfair Competition Pursuant To Business And Professions Code Section 17200 Is Preempted By The Federal Copyright Act.**

State law causes of action are preempted under the Copyright Act if two elements are present. "First, the rights that a plaintiff asserts under the state law must be 'rights that are equivalent' to those protected by the Copyright Act. Second, the work involved must fall within the 'subject matter' of the Copyright

17

Act as set forth in 17 U.S.C. sections 102 and 103." *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998).

When "[t]he essence of plaintiff's complaint [for unfair competition] is derived from defendant's alleged unauthorized use of a copyrighted work," the claim for unfair competition is preempted by federal law. *Motown Record Corp. v. George A. Hormel & Co.* 657 F.Supp. 1236, 1239-1240 (C.D. Cal. 1987). In *Motown Record Corp.*, Motown brought various claims against Hormel for Hormel's use of the song "Baby Love" (by the Supremes) in a Hormel commercial. In upholding Hormel's argument that "the gravamen of [Motown's] unfair competition claim is nothing more than the alleged taking of [Motown's] intellectual property," the Court noted that the disputed composition of "Baby Love 'falls squarely within the subject matter of the copyright act as specified by § 102 [of the Copyright Act]." *Id.* at 1239. In addition, the Court found that "the allegedly infringed rights are the equivalent of the rights specified in § 106 … the rights of reproduction and distribution. *Ibid.*

Within the last year, in consideration of defendant's Motion to Dismiss under Rule 12(b)(6), Judge Pregerson dismissed with prejudice a plaintiff's statutory and common-law unfair competition claims on similar preemption grounds. *See Lions Gate Entm't, Inc. v. TD Ameritrade Servs. Co., Inc.*, 170 F.Supp.3d 1249, 1266-67 (C.D. Cal. 2016) (Pregerson, J.) (finding that "[u]nder standard state and common law preemption analysis from the Ninth Circuit, the state and common-law claims alleged [] are preempted by copyright law because the same rights are asserted in these causes of action as are asserted in the copyright infringement cause of action").

Here, as in the cases described above, the gravamen of Lauter's unfair competition claim is nothing more than a recasting of Lauter's copyright infringement claims. The allegations against Rosenblatt in Lauter's 17200 unfair

competition claim are nearly verbatim recitations of Lauter's claims for copyright infringement. The following comparison of allegations from these two causes of action reveals just how duplicative they are:

SAC, ¶ 232 [**Section 17200**] ("Defendants EBE, Platinum, EBHE, and Rosenblatt, acting individually and in concert, used, copied and distributed the copyrighted films from 12/31/2013 onwards without paying any royalties to Lauter); SAC, ¶ 216(a) [**Copyright Infringement**] ("Defendants EBE, Platinum, EBHE, and Rosenblatt, acting individually and in concert, committed copyright infringement by … [c]ontinuing to use, copy, distribute, publicly display and perform the films from 12/31/2013 up to the present while failing to make required payments under the Agreement).

SAC, ¶ 234 [**Section 17200**] ("Defendants EBE, Platinum, EBHE, and Rosenblatt, acting individually and in concert, used, copied and distributed the copyrighted films from 6/30/2014 onwards without issuing any royalty statements to Lauter); SAC, ¶ 216(b) [**Copyright Infringement**] ("Defendants EBE, Platinum, EBHE, and Rosenblatt, acting individually and in concert, committed copyright infringement by …[c]ontinuing to use, copy, distribute, publicly display and perform the films from 6/30/2014 up to the present while failing to make required royalty reports under the Agreement").

SAC, ¶ 241 [**Section 17200**] ("Defendants EBE, Platinum, EBHE, and Rosenblatt, acting individually and in concert, without any authority, advertised and sold free digital copies of Lauter's films on various business to consumer websites … packaged together with DVD copies of the same film and/or of other films which Lauter does not own and failed to report or pay any revenues from these sales"); SAC, ¶ 216(d) [**Copyright Infringement**] ("Defendants EBE, Platinum, EBHE, and Rosenblatt, acting individually and in concert, committed copyright infringement by … [w]ithout any authority, advertising and selling free

DEFENDANT MICHAEL ROSENBLATT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

1  digital copies of the films on various business to consumer websites … packaged

2  together with DVD copies of the same film and/or other films which Lauter does

3  not own and failing to report or pay any revenues from these sales …")

4  SAC, ¶ 242 [**17200**] ("Defendants EBE, Platinum, EBHE, and Rosenblatt,

5  acting individually and in concert, submitted to Lauter falsified royalty statements

6  from 1st Quarter 2012 through 2nd Quarter 2014 which underreported the income

7  actually received by a factor of 77 …"); SAC, ¶ 216(c) [**Copyright Infringement**]

8  (""Defendants EBE, Platinum, EBHE, and Rosenblatt, acting individually and in

9  concert, committed copyright infringement by … submitting falsified royalty

10 statements from 1st Quarter 2012 through 2nd Quarter 2014 which underreported

11 the income actually received by a factor of 77 …").

12 Based on the foregoing, Lauter's 17200 unfair competition claim is

13 preempted by the Copyright Act.

14 **K. Lauter Fails To State A Claim Against Rosenblatt For Unfair**

15 **Competition In Violation Of The Lanham Act.**

16 "[F]or a complaint to survive a motion to dismiss, the nonconclusory factual

17 content, and reasonable inferences from that content, must be plausibly suggestive

18 of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962,

19 969 (9th Cir. 2009). Although it is true that, in considering a motion to dismiss, the

20 court must construe all factual allegations as true, the court is not, however,

21 "required to accept as true allegations **that are merely conclusory, unwarranted**

22 **deductions of fact, or unreasonable inferences**." *Sprewell v. Golden State*

23 *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (emphasis added).

24 Within the claim for Violation of the Lanham Act, aside from Lauter's

25 conclusory alter ego allegation, which has already been discussed herein, his *only*

26 allegation as to Rosenblatt's involvement is completely belied by Lauter's other

27 factual contentions. More specifically, in paragraph 262 of the SAC, Lauter begins

28

DEFENDANT MICHAEL ROSENBLATT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

by alleging that "Defendant EBE's rights to use the films and associated trademarks terminated on 2/28/2014…" and he then proceeds to make the immediate unwarranted deduction of fact that "… yet Defendants EBE, Platinum, EBHE and Rosenblatt, contrary to the standards and practices of the film industry, failed to inform the third party licensees of such termination while continuing to solicit and receive revenues from their continued unauthorized licensing of the trademarks." SAC, ¶ 262.

First, Lauter's allegation against Rosenblatt in this regard is devoid of any specificity and, instead, relies upon wholly-conclusory language regarding Rosenblatt's purported "fail[ure] to inform," "solicit[ation] and receiv[ing] revenues." This is insufficient. Moreover, Lauter acknowledges in the first portion of paragraph 262 that the purported "rights to use the films and associated trademarks" rested only with EBE, yet he then jumps to the illogical conclusion that *three other Defendants*, including Rosenblatt, somehow violated these rights. This does not follow and should not be allowed by this Court, notwithstanding the fact that this matter is at the "pleadings stage."

**L. Any References To Injunctive Relief Ought To Be Stricken From The Second Amended Complaint**

In the alternative, if certain portions of Lauter's Second Amended Complaint survive the 12(b)(6) Motion to Dismiss, Rosenblatt respectfully requests that the Court strike all references to injunctive relief as Lauter is precluded from seeking the same pursuant to the explicit terms of the Agreement.

As set forth in Rule 12(f)(2) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded … 'Impertinent' matter consists of statements that do not pertain, and are not

DEFENDANT MICHAEL ROSENBLATT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993).  "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Whittlestone, Inc. v. Handi-Craft, Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

Within the Agreement, specifically at Paragraph 17(g), Lauter agreed that "[i]n no event shall [Lauter] be entitled to seek or obtain any specific performance or **injunctive relief** with respect to this Agreement, it being agreed that the only remedy of [Lauter] related to this Agreement shall be an action at law for monetary damage."  (Emphasis added).  Lauter agreed to this explicit language limiting his ability to seek injunctive relief, yet still seeks the same in numerous places throughout his SAC.

Rosenblatt anticipates that Lauter will argue, in a conclusory manner, that the Agreement is terminated/rescinded and, therefore, Lauter is not obligated to comply with the terms therein, included the prohibition on seeking injunctive relief.  This is a dubious position for Lauter to take, especially considering that he is bringing claims for breach of that same Agreement, as well as many other claims arising from obligations contained therein.

Based on the foregoing, in the event that certain portions of Lauter's SAC survive the Motion to Dismiss, Rosenblatt respectfully requests that the Court strike the following language from the SAC:

> "The conduct of defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Lauter great and irreparable injury that cannot be fully compensated or measured in money.  Lauter has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Lauter is entitled to injunctive relief prohibiting defendants from further infringing the copyrights." SAC ¶ 230.

> "Pursuant to California Business and Professions Code § 17203, Plaintiff is entitled to preliminary and permanent

22

injunctive relief ordering Defendants to cease this unfair competition as wells [sic] as restitution, including but not limited to disgorgement of all Defendants' profits derived from their unfair competition."
SAC, ¶ 256.

"Monetary relief is inadequate to compensate for the ongoing irreparable injury.  Therefore Lauter is entitled to preliminary and permanent injunctive relief to stop the unfair competition."
SAC, ¶ 272.

"Enter temporary, preliminary, and permanent injunctive relief barring Defendants and their respective officers, agents, servants, employees, and attorneys, and those persons acting in concert with them, from using, copying, selling, distributing, publicly performing, or displaying the films or the associated trademarks."
SAC, ¶ 273(c) in the Prayer For Relief.

"Enter temporary, preliminary, and permanent injunctive relief barring Defendants and their respective officers, agents, servants, employees, and attorneys, and those persons acting in concert with them, from liquidating, selling or transferring any assets of EBE, EBHE, Platinum and EBAC."
SAC, ¶ 273(k) in the Prayer For Relief.

## IV.   <u>CONCLUSION</u>

Based on the foregoing argument and authority, Defendant Michael Rosenblatt respectfully requests that the Court dismiss each of Plaintiff Brett Lauter's claims against him (Causes of Action Nos. 5-8) for failure to plead sufficient allegations to impute personal liability to Rosenblatt.

In the alternative, Rosenblatt respectfully requests that the Court dismiss the following claims of Lauter against Rosenblatt for the reasons set forth hereinabove: Fifth Cause of Action for Interference with Prospective Economic Advantage; Seventh Cause of Action for Unfair Competition in Violation of Cal. Bus. & Prof.

Code § 17200; and Eighth Cause of Action for Unfair Competition in Violation of 15 U.S.C. § 1125(a) [Lanham Act § 43(a)].

In the alternative, Rosenblatt respectfully requests that the Court strike the following portions of Lauter's Second Amended Complaint: entirety of Paragraph 230; entirety of Paragraph 256; entirety of Paragraph 272; and subsections (c) and (k) of Paragraph 273 in Lauter's Prayer for Relief.

Dated:  May 15, 2017                    **BOREN, OSHER & LUFTMAN, LLP**

By:   /s/ Aaron M. Gladstein
      Jeremy J. Osher
      Aaron M. Gladstein
      Attorneys for Defendant,
      MICHAEL ROSENBLATT

DEFENDANT MICHAEL ROSENBLATT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

# PROOF OF SERVICE

## CASE NO.: 2:15-cv-08481-DDP (KS)

STATE OF CALIFORNIA       )
                            )      ss
COUNTY OF LOS ANGELES   )

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 years of age and am not a party to this action. My business address is 222 N. Sepulveda Blvd., Suite 2222, El Segundo, CA 90245.

     On May 15, 2017, I served the document(s) as described below on interested parties in this action as follows:

**DEFENDANT MICHAEL ROSENBLATT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT OF PLAINTIFF BRETT LAUTER PURSUANT TO FED. R. CIV. P. 12(B)(6) OR, IN THE ALTERNATIVE, MOTION TO STRIKE PORTIONS OF SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(F)(2)**

| ☒ | electronically by using the Court's ECF/CM System. | |
|---|---|---|
| | Brett Lauter<br>1229 Meridian Way<br>Lompoc, CA 93436<br>e-mail: pgemedia@gmail.com | Plaintiff in Pro Per |
| | Oliver M. Gold, Esq.<br>Perkins Coie LLP<br>1888 Century Park East Suite 1700<br>Century City, CA 90067-1721<br>Email: ogold@perkinscoie.com | Attorney for Defendant Echo Bridge Acquisition Corp. LLC |

     I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose discretion the service was made.

Executed on May 15, 2017, at El Segundo, California.

/s/ Lauren Ortega

PROOF OF SERVICE