O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT LAUTER, | ) Case No. CV 15-08481 DDP (KSx) |
| Plaintiff, | ) |
| v. | ) **ORDER RE: DEFENDANT MICHAEL** |
| | ) **ROSENBLATT'S MOTION TO DISMISS** |
| MICHAEL ROSENBLATT; ECHO BRIDGE ENTERTAINMENT, LLC; PLATINUM DISC. LLC; ECHO BRIDGE HOME ENTERTAINMENT;, | ) **THE THIRD AMENDED COMPLAINT** |
| | ) [Dkt 191] |
| Defendants. | ) |

Presently before the Court is Defendant Michael Rosenblatt ("Rosenblatt")'s Motion to Dismiss the Third Amended Complaint ("TAC"). Having considered the submissions of the parties, the court grants the motion in part, denies the motion in part, and adopts the following Order.

**I. Background**

As set forth in this Court's prior Order, Plaintiff Brett Lauter ("Lauter") is the sole proprietor of Pan Global

Entertainment ("PGE"). Plaintiff acquires distribution rights to movies and other media and licenses those rights to other distributors, such as tv channels, video on demand services, websites, and DVD distributors. Plaintiff alleges that Defendant Rosenblatt is the founder, Chairman, CEO, President, managing partner, member, and majority shareholder of Defendant Echo Bridge Entertainment ("EBE") and related entities.

On June 15, 2011, Plaintiff and EBE entered into a "Multi Picture Deal/Acquisition of Digital Rights" Agreement ("the Agreement") with respect to ten films. The Agreement granted EBE a digital distribution license for the ten films in exchange for royalty payments to Lauter. Plaintiff alleges that EBE breached the Agreement by packaging free digital copies of the films together with DVD copies of the same film and other films that Lauter did not own, and by failing to pay royalties owed to Lauter.[1]

Lauter obtained a default judgment against EBE in state court for the unpaid royalties. Lauter attempted to contact EBE regarding subsequent alleged breaches of the Agreement, but received no response. Lauter concluded that, as a result of EBE's silence, continued breach, and perceived insolvency, the Agreement terminated in February 2014. Nevertheless, Lauter alleges, EBE and associated entities continue to distribute the films.

After the initial filing of this lawsuit, Lauter alleges, EBE shut down its office and disconnected all phone and e-mail

---

[1] As discussed further below, Plaintiff's TAC asserts all causes of action against all Defendants, including Rosenblatt.

accounts. Sometime later, Defendant BHCIF, one of EBE's lenders, foreclosed upon EBE's assets to satisfy a debt of $37 million. Lauter alleges that EBE had assets sufficient to cover its debts, but that BHCIF, an alleged insider, nevertheless obtained EBE's assets for only $15 million in canceled debt.

Soon after, BHCIF transferred some of EBE's former assets to another entity, Defendant Echo Bridge Acquisition Corporation ("EBAC"). Within three months, EBAC had obtained all of EBE's former assets. Lauter alleges that BHCIF and EBAC were not good faith transferees of EBE's assets, but rather are EBE's successors. Lauter further alleges that EBAC now distributes some of Lauter's films in violation of his exclusive distribution rights.

Lauter's Second Amended Complaint ("SAC") asserted claims against EBE, EBAC, and BHCIF entities for (1) Breach of Contract, (2) Equitable Accounting, (3) Rescission of Contract, (4) Relief from Transfer under the Uniform Voidable Transaction Act (UVTA), (5) Interference with Prospective Economic Advantage, (6) Copyright Infringement, including contributory and vicarious infringement, (7) Unfair Competition in violation of California Business & Professions Code § 17200, and (8) unfair competition in violation of 15 U.S.C. §1125 (a) [Lanham Act § 43 (a)]. The SAC alleged the latter four claims against Defendant Rosenblatt in his individual capacity as well.

On motions to dismiss brought by EBAC and Rosenblatt, this Court dismissed certain claims against EBAC and all claims against Rosenblatt. The court granted Plaintiff leave to amend, but limited that leave to the scope laid out in the order of dismissal.

Plaintiff then filed the operative Third Amended Complaint. The TAC alleges six causes of action for (1) Breach of Contract, (2) Equitable Accounting, (3) Rescission of Contract, (4) UVTA claims, (5) copyright infringement, including contributory and vicarious infringement, and (6) unfair competition in violation of California Business & Professions Code Section 17200. Unlike the SAC, all causes of action are alleged against all Defendants, including Rosenblatt. Rosenblatt now moves to dismiss all claims against him.

## II. **Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which

4

relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### III. Discussion

**A.** New Causes of Action against Rosenblatt

Rosenblatt argues that the first four causes of action against him should be dismissed because they were not alleged against him in the Second Amended Complaint. Thus, Rosenblatt contends, the Third Amended Complaint's addition of these new causes of action against him exceeds the scope of this Court's leave to amend the SAC. The court agrees.

This Court's prior Order explained, at length, the deficiencies in certain of Plaintiff's allegations against EBAC and the infirmities in all of his claims against Rosenblatt. (Dkt. 183.) The Order specifically observed in the first instance that only some of the SAC's causes of action were alleged against Rosenblatt individually. (Dkt. 183 at 18.) Although the court granted Plaintiff leave to amend his complaint a third time, the court limited that leave "to the scope described in this Order,"

and specified that such limitation was applicable to amended claims against Rosenblatt as well. (Dkt. 183 at 22 n. 11.)

Plaintiff suggests that the TAC does not allege any new claims against Rosenblatt because the SAC alleged that EBE is Rosenblatt's alter ego, and therefore any claims alleged against the corporation in the SAC were also alleged against Rosenblatt individually. (Opposition at 11.) That argument, however, is inconsistent with the SAC itself. The first four causes of action in the SAC, in contrast with the latter four, specifically name only the corporate Defendants, while the latter four causes of action are alleged against "All Defendants," including Rosenblatt. This differential treatment is difficult to reconcile with Lauter's argument that the alter ego allegations were themselves sufficient, or intended, to name Rosenblatt in all of the SAC's causes of action. Furthermore, apart from incorporated references to background facts, the SAC's allegations regarding the first four causes of action make no mention of Rosenblatt, any conduct by Rosenblatt, or any alter ego theory. The latter four causes of action, in contrast, all specifically mention Rosenblatt, his actions, and Plaintiff's alter ego theory.

The Second Amended Complaint did not include causes of action against Rosenblatt for breach of contract, accounting, rescission, or voidable transactions. Thus, when the court dismissed all claims against Rosenblatt, with leave to amend those claims, the scope of the court's grant of leave to amend did not extend so far

as to permit the filing of new claims against Rosenblatt.[2] Accordingly, Rosenblatt's motion to dismiss claims one through four against him is granted.

B. Copyright Infringement Claims

Plaintiff alleges his fifth cause of action, "Copyright Infringement, Contributory Copyright Infringement & Vicarious Copyright Infringement" against all Defendants, including Rosenblatt. Plaintiff alleges that Rosenblatt is personally liable, is liable as an alter ego of EBE, and is liable pursuant to California Corporations Code Section 17707.07. The court addresses each theory of liability in turn.

1. Section 17707.07

California Corporations Code Section 17707.07(a)(3) provides that a cause of action against a dissolved limited liability company may be enforced against members of the dissolved company to the extent that company assets were distributed to the members upon dissolution. Cal. Corp. Code § 17707.07(B); <u>CB Richard Ellis, Inc. v. Terra Nostra Consultants</u>, 230 Cal. App. 4th 405, 412 (2014). The TAC alleges that EBE "de facto" dissolved on June 16, 2015, and that "contemporaneous" with that dissolution, Rosenblatt received a distribution of funds from EBE entities. (TAC ¶¶ 106, 109.) Rosenblatt argues that the allegation that he received a distribution of funds is not plausible, and that this Court should view it with "heightened scrutiny" because Lauter did not allege

---

[2] The court notes that Lauter's opposition to Rosenblatt's motion to dismiss the SAC did not request leave to add any new claims against Rosenblatt. (Dkt. 128.)

7

this fact in prior iterations of the TAC.  (Reply at 5.)  This argument is not persuasive.  First, the fact that Lauter may only recently have discovered this potential basis for Rosenblatt's liability has no bearing on the plausibility of Lauter's factual allegations.  Second, Lauter's allegation that Rosenblatt received a distribution is not merely a formulaic recitation of a legal element, but is supported by further factual allegations that Rosenblatt was EBE's sole member.  (FAC ¶ 106.)  As such, Rosenblatt might plausibly have received a distribution of EBE assets upon EBE's de facto dissolution.

Rosenblatt also asserts that this court should not accept as true Lauter's allegation that at all relevant times, Rosenblatt was a member of EBE.  (Reply at 5.)  Rosenblatt bases this argument on the fact that his own sworn declaration states that he resigned from EBE effective June 1, 2015.  (Mot. at 2; Dkt. 133-5.) Although Rosenblatt implicitly acknowledges that a dispute of fact would generally be irrelevant at the pleading stage, Rosenblatt suggests that Lauter's allegation about Rosenblatt's membership in EBE should nevertheless be rejected because the TAC itself refers to and incorporates Rosenblatt's sworn declaration.

This argument also fails.  First, it is not clear from the face of the TAC that Rosenblatt had resigned as a member of EBAC by the time of its alleged dissolution.  Even accepting Rosenblatt's declaration at face value, it states only that a Separation Agreement with EBE "denoted [Rosenblatt's] effective resignation date from EBE as June 1, 2015."  (Dkt. 133-5 ¶ 3.)  The scope of that resignation, however, remains to be seen.  Indeed, the TAC

alleges that Rosenblatt only resigned as President and CEO, not as a member. (TAC ¶ 106.) Second, no fair reading of the TAC could suggest that Lauter alleges that the facts contained within Rosenblatt's declaration are true. The TAC alleges, in the context of alleging that Rosenblatt and EBE are alter egos, that Rosenblatt concealed and misrepresented "the identity of the responsible ownership, management and financial interest, or concealment of personal business activities. Rosenblatt refuses to reveal the manner of his alleged separation from EBE entities [Rosenblatt Declaration, Document 133-5] . . . ." TAC ¶ 114-5 (internal citation original). Thus, although Rosenblatt is correct that the TAC refers to his declaration, it is clear in context that Plaintiff disputes, rather than concedes, the veracity of Rosenblatt's sworn statement. Whether Rosenblatt remained a member of EBE at the time of its dissolution, and is therefore potentially liable under Section 17707.07, is a question of fact that remains to be answered.[3]

2. Individual Liability

As this Court explained when dismissing the claims against Rosenblatt in the SAC, although corporate officers generally are not personally liable for corporate acts, individuals "may become

---

[3] Rosenblatt also argues that he cannot be liable under Section 17707.07 because the statute only allows for the recovery of distributed assets. (Mot. at 11-12.) Lauter, for his part, does not dispute that his recovery would be limited to LLC assets. (Opposition at 13.) See CB Richard Ellis, Inc., 230 Cal. App. 4th at 414-15. Any limitations on the amount of Lauter's potential recovery, however, do not appear pertinent to whether Rosenblatt may be individually liable in the amount of the distributed company assets.

9

liable if they directly authorize or actively participate in wrongful or tortious conduct." Taylor-Rush v. Multitech Corp., 217 Cal. App. 3d 103, 113 (1990). This Court further explained that allegations that Rosenblatt "was aware of" tortious conduct and "had the right and ability to supervise" employees were not sufficient to allege Rosenblatt's active participation in infringing conduct. Unlike the SAC, however, the TAC now alleges that Rosenblatt not only "had the right and ability" to supervise specifically-named EBE employees who issued false royalty statements, withheld royalties, and unlawfully distributed Lauter's films, but also that Rosenblatt "intentionally induced and encouraged direct infringement" and indeed "instructed" employees to commit wrongful acts. (TAC ¶¶ 233-34.)

Rosenblatt argues that this theory of liability is unsustainable because Plaintiff's new allegation that Rosenblatt "instructed" employees to infringe is inconsistent with Lauter's prior allegation in the SAC that Rosenblatt merely "had the right and ability" to supervise employees. As an initial matter, it is not clear whether an amended pleading's inconsistency with a prior allegation is necessarily fatal to the former. See Royal Primo Corp. v. Whitewater W. Indus., Ltd, No. 15-CV-04391-JCS, 2016 WL 1718196 at *3 (N.D. Cal. Apr. 29, 2016). Here, however, there is no inconsistency between the allegations of the SAC and the TAC. First, far from contradicting the SAC, the TAC makes an identical allegation that Rosenblatt had that ability and right to supervise EBE employees. The TAC's new allegation, that Rosenblatt directly instructed employees to commit wrongful acts, does not conflict

with that allegation. Indeed, absent the opportunity and authority to direct employee activities, Rosenblatt could not possibly have effectively instructed EBE employees to do anything. Contrary to Rosenblatt's assertion, the allegations that Rosenblatt both had the power to supervise employees and exercised that power is in no way "paradoxical." (Reply at 13:13.)

    3. Alter Ego

The TAC, like the SAC, alleges that Rosenblatt is an alter ego of EBE. (TAC ¶¶ 114, 247). As this Court explained when dismissing Lauter's prior claims against Rosenblatt, "[t]he alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation." Nielson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003). The purpose of the alter ego doctrine is to avoid injustice when there is an abuse of the corporate privilege. Id.

Only "exceptional circumstances" allow a court to disregard the corporate form and find liability as to individuals. Leek v. Cooper, 194 Cal. App. 4th 399, 411 (2011). A wide variety of factors may be pertinent to the alter ego inquiry, depending on the circumstances of the particular case. Assoc. Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 838 (1962). These factors include, but are not limited to, commingling of funds, unauthorized diversion of corporate funds to other uses, failure to maintain adequate corporate records, sole or family ownership of all of the

stock in a corporation, failure to adequately capitalize a corporation, use of a corporation as a conduit for the business of an individual, disregard of legal formalities, and diversion of assets from a corporation to a stockholder to the detriment of creditors. Schwarzkopf, 626 F.3d at 1038; Zoran Corp. v. Chen, 185 Cal. App. 4th 799, 811-12 (2010); Assoc. Vendors, 210 Cal. App. 2d at 838-39; but see Leek, 194 Cal. App. 4th at 415 ("An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity."). A plaintiff must allege facts demonstrating both a unity of interest between the corporation and its owner and that it would be unjust to treat the wrongful acts as those of the corporation alone. Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015).

Rosenblatt focuses primarily on the first of these factors, arguing that Lauter has again failed to adequately allege a unity of interest between the EBE entities and Rosenblatt himself.[4] Lauter first alleges that EBE failed to maintain adequate corporate records because certain annual reports filed in Massachusetts contained false information. (TAC ¶ 114-1.) Although Rosenblatt does not dispute that the reports are "corporate records" of a sort, publicly filed reports are not the types of records pertinent to an alter ego analysis. Rather, the analysis looks to whether a corporation maintained internal documents and records, such as

---

[4] Lauter's Opposition is not particularly responsive to Rosenblatt's arguments, and largely sets forth disputes of fact rather than address the adequacy of the TAC's allegations. (Opp. at 13-16.)

12

corporate minutes, typical of a functional and independent corporation. See, e.g., Mid-Century Ins. Co. v. Gardner, 9 Cal. App. 4th 1205, 1213, 11 Cal. Rptr. 2d 918, 922 (1992).

Plaintiff similarly alleges that EBE disregarded legal formalities by filing improper paperwork with state entities and failing to comply with state statutes regarding payment of corporate debts. (TAC ¶ 114-6.) The "formalities" relevant to an alter ego analysis, however, typically refer to internal corporate processes, such holding board meetings, maintaining corporate records, and issuing stock and dividends. See, e.g., Boeing Co. v. KB Yuzhnoye, No. CV1300730ABAJWX, 2016 WL 2851297, at *27 (C.D. Cal. May 13, 2016); Willig v. Exiqon, Inc., No. SA CV 11-399 DOC RNB, 2012 WL 10375, at *10 (C.D. Cal. Jan. 3, 2012); Lounge 22, LLC v. Am. Furniture Rentals, Inc., No. CV0903330SJOVBKX, 2009 WL 10675495, at *3 (C.D. Cal. July 2, 2009).

Lauter also points to the fact that, in the early stages of this litigation, Rosenblatt and EBE were both represented by the same attorney. (TAC ¶ 114-2.) Given Rosenblatt's former role as EBE's sole corporate officer, that fact is not illustrative of an alter ego relationship, particularly in light of Rosenblatt's subsequent retention of independent counsel.

Plaintiff does, however, allege some facts that give rise to an inference of alter ego liability. Foremost, Lauter alleges, as he did in the SAC, that EBE was undercapitalized. (TAC ¶¶ 114-3, 114-4.) This is a potentially "critical fact," if accompanied by other indicators of an alter ego relationship. See Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F.3d 1143, 1149 (9th Cir.

2004); Mid-Century Ins., 9 Cal. App. 4th at 1213. The TAC does include such supporting allegations. Lauter alleges, for example, that Rosenblatt was EBE's sole member and manager, and that any resignation that took effect prior to EBE's dissolution pertained only to Rosenblatt's corporate duties, not his membership. (TAC ¶ 106.) Furthermore, unlike the SAC, the TAC alleges that Rosenblatt used EBE as a vehicle for copyright infringement. (TAC ¶ 114-9.) Although the SAC did not allege that Rosenblatt engaged in any non-corporate acts, the TAC, as discussed above, does allege that Rosenblatt personally directed EBE employees to engage in infringing activities. (TAC ¶¶ 233-34.) The TAC further alleges that when Lauter sued, EBE transferred its assets to other entities and closed up shop, and that Rosenblatt's counsel "boasted to Lauter that 'any judgment [he] would get against the EBE entities would get in line with all other unsecured creditors.'" (TAC ¶¶ 114-8, 114-9.)

Thus, although some of the TAC's allegations are not reflective of an alter ego relationship between EBE and Rosenblatt, on balance, Plaintiff has plausibly alleged the existence of such a relationship and the inequitable result that would flow from treating EBE's acts as the corporation's alone.

C. Copyright Act Preemption

Lastly, Rosenblatt argues that Lauter's Sixth Cause of Action for unfair competition under California Business & Professions Code Section 17200 is preempted by the Copyright Act. The Copyright Act preempts rights under common law or state statutes that "are equivalent to any of the exclusive rights within the general scope

14

of copyright . . . ." 17 U.S.C. § 301(a). In conducting a preemption analysis, the reviewing court must first determine whether the subject matter of the arguably preempted claim falls within the subject matter of copyright and, if so, determine whether the rights asserted are equivalent to the copyright rights set forth in 17 U.S.C. § 106. Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co., Inc., 170 F. Supp. 3d 1249, 1264 (C.D. Cal. 2016).

Here, Plaintiff's unfair competition claim against Rosenblatt centers on Rosenblatt's alleged unauthorized distribution of Lauter's films and fabrication of royalty statements related thereto. (TAC ¶¶ 259-60.) The subject matter of these allegations falls within the subject matter of copyright and seeks to vindicate the same rights. Although Lauter's opposition argues that his claims involve an "extra element" unrelated to copyright, those "extra elements" pertain to breach of contract, voidable transfer, and other causes of action against Rosenblatt that, for the reasons discussed above, must be dismissed. Because Lauter's unfair business practices claim under California Business & Professions Code Section 17200 is predicated upon other unlawful activity, and his only remaining claim against Rosenblatt is the copyright claim, the two claims are duplicative, and the former is preempted by the Copyright Act.

## IV. Conclusion

For the reasons stated above, Rosenblatt's Motion to Dismiss is GRANTED in part and DENIED in part. Rosenblatt's motion is granted with respect to Plaintiff's first four causes of action for

(1) Breach of Contract, (2) Equitable Accounting, (3) Rescission of Contract, and (4) Relief from Transfer under the Uniform Voidable Transaction Act. Those claims against Rosenblatt are DISMISSED. Rosenblatt's motion is also granted with respect to Plaintiff's Sixth Cause of Action. PLaintiff's Sixth Cause of Action against Rosenblatt for unfair competition is DISMISSED. Rosenblatt's motion is DENIED with respect to Plaintiff's Fifth Cause of Action.

No further amendment of the Third Amended Complaint shall be permitted, absent leave of the court.

IT IS SO ORDERED.

Dated: August 10, 2018

DEAN D. PREGERSON

United States District Judge