O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRETT LAUTER, | ) | Case No. CV 15-08481 DDP (KSx) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| MICHAEL ROSENBLATT; ECHO BRIDGE ENTERTAINMENT, LLC; PLATINUM DISC. LLC; ECHO BRIDGE HOME ENTERTAINMENT;, | ) ) ) ) | [Dkt. 269, 275] |
| Defendants. | | |

Presently before the court is pro se Plaintiff Brett Lauter's Motion for Partial Summary Judgment. Having considered the submissions of the parties, the court denies the motion and adopts the following Order.[1]

---

[1] Plaintiff first filed a Motion for Judgment on the Pleadings raising arguments virtually identical to those raised here. (Dkt. 269.) Plaintiff filed the instant motion for summary judgment soon after, before Defendant filed any opposition to the initial motion for judgment on the pleadings. As Defendant eventually argued, the motion for judgment on the pleadings went well outside the pleadings. (See Dkt. 284.) Although Plaintiff did not concede as much, his decision to file the instant motion for summary judgment on the heels of his prior filing appears to suggest an appreciation of the failings of the motion for judgment on the pleadings. That
(continued...)

## I. Background

The lengthy factual and procedural history of this case is well known to the parties, and described in detail in this Court's prior orders. (Dkt. 43, 183, 238). In short, Plaintiff, through his business Pan Global Entertainment, acquires exclusive distribution rights to motion pictures and then licenses those rights to third parties. Plaintiff entered into agreements with Defendant Echo Bridge Entertainment ("EBE") granting EBE a license to distribute several films. Plaintiff's Third Amended Complaint alleges that EBE and related entities failed to pay agreed-upon royalties to Plaintiff and distributed Plaintiff's films outside the scope of the agreements, infringing upon the copyrights to the films.

EBE ceased operations, and Plaintiff obtained default judgments against it in both state court and, later, in this Court.[2] One of EBE's lenders, Defendant BHC Interim Funding II, L.P. ("BHCIF"), acquired EBE's assets through a foreclosure sale. BHCIF later transferred EBE's former assets to Defendant Echo Bridge Acquisition Corporation, LLC ("EBAC"). Plaintiff alleges, however, that both BHCIF and EBAC are successors to EBE, and that EBAC is an alter ego of EBE, and is liable for EBE's wrongful acts as well as EBAC's own. EBAC's counterclaim seeks a declaration that EBAC did possess distribution rights to two of the films listed in Plaintiff's Third Amended Complaint.

---

[1](...continued)
motion is also DENIED.

[2] The term "EBE," as used in this Order, includes related entities Platinum Disc, LLC ("Platinum") and Echo Bridge Home Entertainment ("EBHE").

2

Plaintiff now moves for partial summary judgment against EBAC on several issues related to certain of Plaintiff's claims, EBAC's counterclaim, and EBAC's affirmative defenses.

**II.  Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).  If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  A genuine issue exists if "the evidence is such

3

that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

    A.   Whether EBE's Rights Were Assignable

        1.   The plain language of the agreements

Plaintiff contends first that EBE could not assign the rights it obtained from Plaintiff without Plaintiff's explicit consent, and therefore any purported assignment to EBAC (from BHCIF after the foreclosure sale) was invalid. There appears to be no dispute as to the applicable law: the Copyright Act "does not allow a copyright licensee to transfer its rights under an exclusive license, without the consent of the original licensor." Gardner v. Nike, Inc., 279 F.3d 774, 780 (9th Cir. 2002). EBAC contends, however, that the agreements between Plaintiff and EBE did explicitly provide for a right of assignment. The integrated

4

"Acquisition of Rights" agreements granted EBE "the sole and exclusive right . . . to license, sell, manufacture, advertise, promote and/or distribute, including through subdistributors, the VIDEO RIGHTS including retail MOD (Manufacture on Demand) rights." (Exs. 1, 2, to EBAC's Answer and Counterclaim) (emphasis added). The accompanying license, signed the same day, granted Platinum (an EBE entity) "and its successors and assigns, the sole and exclusive Video . . . rights of all kinds whatsoever . . . ." (Id., Ex. A) (emphasis added). This language clearly supports EBAC's argument.

Plaintiff argues, however, that the words "assign" and "assignee" refer only to a DVD license and ultimate buyers of DVDs, respectively. The thrust of Plaintiff's argument is not entirely clear to the court. The rights conveyed to EBE clearly include a right to license, and the license issued to EBE refers to EBE's own assigns. Although Plaintiff asserts that those rights are limited to certain DVD rights, the term "video rights" is defined to include "distribution, licensing, sale, rental and/or exploitation via any video medium." (Answer and Counterclaim, Ex. 1.)

The only evidentiary support for Plaintiff's contention that the agreements do not mean what they appear to mean is his own declaration. Although EBAC contends that the parol evidence rule bars any consideration of Plaintiff's declaration, EBAC's argument is somewhat misplaced. The authority upon which EBAC relies applies Virginia law, and explicitly states that the outcome would be different under California law. Wilson Arlington Co. v. Prudential Ins. Co. of Am., 912 F.2d 366, 370 (9th Cir. 1990). In California, extrinsic evidence may, in some cases, be considered to explain the meaning of a written instrument. Foad Consulting Grp.,

5

1 Inc. v. Azzalino, 270 F.3d 821, 828 (9th Cir. 2001); Trident Ctr.
2 v. Connecticut Gen. Life Ins. Co., 847 F.2d 564, 569 (9th Cir.
3 1988); but see Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136,
4 1142 (9th Cir. 2003) (stating that although extrinsic evidence may
5 be consulted to explain contractual terms, it may not be relied
6 upon to contradict clearly stated terms).
7     The Ninth Circuit has not addressed whether California's
8 liberal parol evidence rule conflicts with the provisions of the
9 Copyright Act regarding exclusive licenses.  See Foad, 270 F.3d at
10 828; Rivers v. Skate Warehouse, LLC, No. CV 12-9946 MMM (CWX), 2013
11 WL 12114010, at *11 n.113 (C.D. Cal. Dec. 20, 2013).  This court
12 need resolve that question, however.  Plaintiff's declaration does
13 not so much seek to explain contractual terms as to contradict the
14 language covering video rights "of all kinds whatsoever."  See
15 Warren, 328 F.3d 1136 at 114.  Even if Plaintiff's declaration is
16 merely explanatory, and therefore can be considered to resolve
17 ambiguous terms in the license agreements, that fact alone is
18 sufficient to defeat Plaintiff's motion, as "[s]ummary judgment is
19 inappropriate where extrinsic evidence is needed to determine the
20 meaning of ambiguous contract language."  Krishan v. McDonnell
21 Douglas Corp., 873 F. Supp. 345, 352 (C.D. Cal. 1994) (citing Int'l
22 Bhd. of Elec. Workers, AFL-CIO Local 47 v. S. California Edison
23 Co., 880 F.2d 104, 107 (9th Cir. 1989) ("When the meaning of an
24 agreement is ambiguous on its face and contrary inferences as to
25 intent are possible, an issue of material fact exists for which
26 summary judgment ordinarily is inappropriate.")).  There is,
27 therefore, at least a triable issue of fact as to whether the
28

6

rights EBAC claims to possess were assigned to EBE in the first instance.[3]

    2. Whether the contracts were un-assignable absent consent

     *i. Personal services*

Plaintiff argues that the EBE agreements were not assignable without Plaintiff's consent because plaintiff "relied upon [EBE's] integrity, qualifications, and skill in releasing and promoting his films . . . ." (Mot. at 14:24-25.) This is a contention that the contracts at issue were personal service contracts, which are subject to a narrow exception to the general rule of assignability of contracts. See In re Health Plan of Redwoods, 286 B.R. 407, 409 (Bankr. N.D. Cal. 2002). "In California, as in most other states, the test is whether the contract involves a personal relation of confidence between the parties or relies on the character and personal ability of a party." Id. "Whether or not a contract is a personal services contract is a question of fact to be made under state law after all facts and circumstances are considered." Id. Here, there is no evidence whatsoever, let alone undisputed evidence, that Plaintiff relied in any way upon the EBE's entities' character or particular abilities.

Although Plaintiff asserts that substitution of any assignee in place of EBE materially changed his own duties, increased the risk to him, impaired his chance of obtaining return performance,

---

[3] For these same reasons, Plaintiff's motion for partial summary judgment is denied with respect to his unfair competition claim, which rests upon the theory that "EBAC profited from an unlawful, unfair assignment and mortgage of the films." (Mot. at 20:3-4.)

7

and materially reduced the value of the contracts to Plaintiff, he provides no explanation of how this was so, let alone evidence to support his assertions.  Indeed, the fact that a party contracted with a corporation, rather than an individual, is often evidence that the contracts at issue are not personal service contracts intended to be nonassignable.  See, e.g., Farmland Irr. Co. v. Dopplmaier, 48 Cal. 2d 208, 223, 308 P.2d 732 (1957) ("[I]f [the plaintiff] thought that control of the [contracting] corporation by a particular person was essential to assure an advantageous return of royalties, he would have provided against the possibility of that person's selling his interest. [The plaintiff's] failure to do so is a strong indication that he did not consider personal control . . . essential."); Haldor, Inc. v. Beebe, 72 Cal. App. 2d 357, 366, 164 P.2d 568 (1945) ("[T]he instant case relates to a contract with a corporation which, as we have said, cannot, as such, render personal service.").  Furthermore, the inclusion of licensing rights in the EBE agreements suggests that Plaintiff did not rely upon any characteristic particular to EBE.

There is no factual basis upon which to grant summary judgment on the question whether Plaintiff's agreements with EBE were personal service contracts.

*ii. Frustration of purpose*

It is undisputed that Plaintiff did not receive notice of EBAC's acquisition of EBE's rights via assignment.  Plaintiff asserts that because of that lack of notice, Plaintiff's "contractual duties were changed and all the provisions requiring Platinum/EBHE's return performance were rendered impossible," thus rendering the contracts invalid.  (Mot. at 17: 15-16, 18:5.)

8

Plaintiff's argument is predicated on characterizations of the terms of the agreement, absent any specific citations, that do not appear to be accurate. Plaintiff asserts, for example, that he had preapproval rights regarding cover art and trailers, but no such language appears in the agreements. To the contrary, the contractual terms provided that EBE had "absolute discretion concerning the marketing . . . of the rights," and that the "business judgment of EBHE and/or its assignees regarding any such matter shall be binding and conclusive upon [Plaintiff]." (Answer and Counterclaim, Ex. 1.) Despite Plaintiff's assertion that a mutual indemnification provision was rendered impossible upon EBAC's acquisition of the contract rights, the agreement appears to expressly contemplate such an outcome, providing for mutual indemnification of "the other party <u>and its . . . successors, licensees, [and] assigns</u> . . . ." (<u>Id.</u>)(emphasis added.) Plaintiff also complains that the assignment to EBAC rendered it impossible for him to exercise a contractual provision allowing him free access to "key art campaigns and trailers, if created by EBHE," but provides no evidence than any such art existed, let alone that EBAC prevented Plaintiff's access to it.

    Nor, despite Plaintiff's contention that the contracts required that the films "be released under EBHE's own label" does any such language appear in the agreements. This unsupported assertion also underpins Plaintiff's argument that "the whole purpose of the contracts was for Platinum/EBHE to release the films under the EBHE label." (Mot. at 18:8-9.) The frustration of purpose doctrine invalidates a contract when the "fundamental reason of both parties for entering into the contract has been

9

frustrated by an unanticipated supervening circumstance, thus destroying substantially the value of performance by the party standing on the contract." Cutter Labs., Inc. v. Twining, 221 Cal. App. 2d 302, 315 (1963). "The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." Restatement (Second) of Contracts § 265 (1981) cmt. a. Decreased profitability to one party, even to the point of a negative return, is not sufficient to establish frustration of purpose. Rather, "the frustration must be so severe that it is not fairly to be regarded as within the risks . . . assumed under the contract." Id. Furthermore, "[i]t is settled that if the parties have contracted with reference to the frustrating event or have contemplated the risks arising from it, they may not invoke the doctrine of frustration." Glenn R. Sewell Sheet Metal, Inc. v. Loverde, 70 Cal. 2d 666, 676, 451 P.2d 721, 727 (1969).

With these principles in mind, it is impossible to conclude that the principal purpose of the contracts between Plaintiff and EBE was frustrated. The transactions would have continued to make sense even without a provision requiring that the films be released under EBE's label. Plaintiff received a flat fee of $3,000 per film, "with no additional payments due" to Plaintiff, regardless whether EBE continued to distribute films under its own, or any other, label. Moreover, the parties appear to have contemplated the possibility that the purportedly frustrating event, EBE's transfer of its rights, would occur, as evidenced by contract terms regarding successors, assigns, and licensing. Plaintiff's motion

for summary judgment is, therefore, denied with respect to frustration of purpose.

### B. Whether the Secured Party Sale Was Valid

Next, Plaintiff argues that the foreclosure sale, through which BHCIF obtained EBE's rights before later assigning them to EBAC, was invalid.

#### 1. Lack of Secured Interest

Plaintiff argues first that "no party ever recorded a security interest in the films" with the Copyright Office. Although not entirely clear, the court reads this as a contention that EBAC could not have obtained any rights from BHCIF because BHCIF never perfected a security interest in any of the rights Plaintiff granted to EBE. As an initial matter, much of Plaintiff's argument is directed to a claim that EBAC has never put forth. EBAC does not claim that any party ever acquired or attempted to transfer a security interest in "the films" or in the copyrights themselves. Rather, EBAC asserts that BHCIF had a security interest in the freely-assignable distribution agreements.

The authorities upon which Plaintiff relies are, therefore, inapposite. EBAC does not dispute that the Copyright Act governs transfers of copyright ownership, or that securitization of a copyright interest requires recordation with the Copyright Office, rather than through any state-prescribed procedure. See In re Cybernetic Servs., Inc., 252 F.3d 1039, 1056 (9th Cir. 2001); In re Peregrine Entm't, Ltd., 116 B.R. 194, 201 (C.D. Cal. 1990). EBAC has submitted evidence, however, of a security agreement between EBE and BHIC that included the rights ultimately conveyed to EBAC, as well evidence of UCC filings in several states referencing that

11

agreement. (Eisenberg Decl., Ex. 1, Leichter Decl. in support of opposition, Ex. A.) Although Plaintiff argues in his reply that BHIC was required to record even a secured interest in the distribution agreements with the Copyright Office, he provides no clear authority to support that contention.[4] EBAC, for its part, also fails to provide any authority establishing that the action it took "obviated the need for a recordation with the Copyright Office." Accordingly, Plaintiff's motion for partial summary judgment with respect to this issue is denied, without prejudice.

    2. Whether the sale to BHCIF was commercially unreasonable

A defaulting secured party may dispose of collateral through sale, lease, license, or "otherwise dispose of any or all of the collateral." U.C.C. § 9-610(a). "Every aspect" of any such disposition, however, must be "commercially reasonable." Id., § 9-610(b). Plaintiff argues that the secured party sale by which BHCIF acquired EBE's rights was not commercially reasonable because (1) BHCIF was the only bidder, (2) BHCIF won the auction with a cashless credit bid (i.e., cancellation of debt rather than cash), (3) BHCIF canceled only 17% of the debt owed to BHCIF, (4) there was only one advertisement in one publication about the sale, and Plaintiff received no notification of the sale, and (5) the sale purported to include several movies in the public domain. Plaintiff does not support his arguments with citations to any authority, nor is the court aware of any support for the proposition that any of

---

[4] In re Franchise Pictures LLC, 389 B.R. 131, 142 (Bankr. C.D. Cal. 2008), does not state that the only way a party seeking to record a security interest such as that at issue here is via the Copyright Office.

12

these aspects of the secured party sale is necessarily unreasonable.[5] To the contrary, "[t]here is no settled or universally accepted definition of the term 'commercially reasonable efforts,'" which will vary with the performing parties' business interests. Citri-Lite Co. v. Cott Beverages, Inc., 721 F. Supp. 2d 912, 926 (E.D. Cal. 2010). "[W]hether a sale of collateral is conducted in a commercially reasonable manner is generally a question of fact." Aspen Enters., Inc. v. Bodge, 37 Cal. App. 4th 1811, 1827, 44 Cal. Rptr. 2d 763, 774 (1995); see also Apex LLC v. Sharing World, Inc., 206 Cal. App. 4th 999, 1019, 142 Cal. Rptr. 3d 210, 225 (2012). Because such questions are usually "factually intense," summary judgment on commercial reasonableness is generally improper. Citri-Lite, 721 F. Supp. 2d at 926; Preci-Dip SA v. Tri-Star Elecs. Int'l, Inc., No. CV 17-5052 GW (ASX), 2018 WL 6521500, at *3 (C.D. Cal. Sept. 5, 2018). Plaintiff's motion for partial summary judgment is, therefore, denied with respect to commercial unreasonableness.

### C. EBAC's Affirmative Defenses

#### 1. Adequacy of Remedy at Law

EBAC's Fifth Affirmative Defense states that Plaintiff is not entitled to injunctive relief because he has an adequate remedy at law and will not suffer any irreparable harm that cannot be remedied by monetary damages. Although not stated in EBAC's pleading, the defense appears to be based upon a contractual waiver of injunctive relief. The agreements state, "In no event shall

---

[5] EBAC also points to evidence establishing that Plaintiff's characterization of the limited notice of sale is simply inaccurate.

13

[Plaintiff] be entitled to seek or obtain any specific performance or injunctive relief with respect to this Agreement, it being agreed that the only remedy of [PLaintiff] related to this Agreement shall be an action at law for monetary damages." (Answer, Ex. 1.)  Plaintiff's reply makes no mention of this waiver provision, nor addresses EBAC's argument.  The motion for summary judgment is denied with respect to EBAC's Fifth Affirmative Defense.

        2.   Unjust Enrichment

Plaintiff challenges EBAC's unjust enrichment defense on the ground that EBAC claims to have obtained EBE's contractual rights, and there can be no unjust enrichment where a contract covers the same subject matter. See Zepeda v. PayPal, Inc., 777 F. Supp. 2d 1215, 1223 (N.D. Cal. 2011).  EBAC raises unjust enrichment not as a counterclaim, however, but rather as a "prospective" affirmative defense.  (Opp. at 21:17.)  In other words, EBAC asserts that if plaintiff were to recover any monetary damages, he would be unjustly enriched because he already received the $3,000 per film flat fee contemplated by the agreements between Plaintiff and EBE. The court notes that the authority cited by EBAC does not appear to support EBAC's contention that unjust enrichment can be raised as an affirmative defense, and some courts have expressed some skepticism that such a defense exists under California law. See, e.g., Okada v. Whitehead, No. 815CV01449JLSKES, 2017 WL 1237969, at *5 (C.D. Cal. Apr. 4, 2017), aff'd, 759 F. App'x 603 (9th Cir. 2019).  Other courts, however, have suggested that under certain circumstances, such a defense may be proper.  See, e.g., Barnes v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d

14

1167, 1172-74 (N.D. Cal. 2010); <u>Snap! Mobile, Inc. v. Croghan</u>, No. 18-CV-04686-LHK, 2019 WL 884177, at *7 (N.D. Cal. Feb. 22, 2019);p <u>VenVest Ballard, Inc. v. Clockwork, Inc.</u>, No. EDCV1400195MWFEX, 2014 WL 12589647, at *5 (C.D. Cal. Oct. 6, 2014); <u>Joe Hand Promotions, Inc. v. Garcia</u>, No. 1:11CV02030 LJO DLB, 2012 WL 1413940, at *4 (E.D. Cal. Apr. 23, 2012).[6]  Because Plaintiff fails to provide any factual basis for his argument, and does not address EBAC's contention his reply, the motion for summary judgment is denied.

        3.   Estoppel

EBAC's estoppel defense alleges that Plaintiff granted Platinum (an EBE entity) permission to license or assign the rights EBAC claims to have obtained and exercised.  Plaintiff argues that summary judgment is warranted becasuse "EBAC alleges only that [Plaintiff] made a promise to Platinum, not to EBAC."  (Mot. at 23:2-3.)  As discussed above, whether that promise included a transfer of assignable rights presents at least a triable question of fact.  The motion is denied with respect to the estoppel defense.

        4.   Good Faith Transferee

Plaintiff's argument regarding EBAC's good faith transferee defense essentially restates his other arguments, including those regarding the alleged unreasonableness of the secured sale of EBE's assets to BHCIF, the lack of a recorded interest in the films, and

---

[6] This court denied Plaintiff's Motion to Strike EBAC's unjust enrichment defense solely on the basis that, contrary to Plaintiff's argument, EBAC pleaded sufficient facts to put Plaintiff on notice of the nature of the asserted defense. <u>See</u> Dkt. 250.

15

the lack of Plaintiff's consent. The motion is denied as to the good faith transferee defense, for the reasons stated above.

### 5. Real Party in Interest

EBAC's Ninth Affirmative Defense asserts that Plaintiff, an individual, is not the real party in interest because the agreements with EBE were signed by Pan Global Entertainment, not Plaintiff in his individual capacity. Plaintiff seeks summary judgment on this defense because it is undisputed that EBE paid license fees directly to Plaintiff, and because one of EBAC's lawyers in a declaration characterized the agreements as involving an EBE entity and Plaintiff, individually. Plaintiff further asserts, without any citation to the record, that Pan Global Entertainment is not, and never was, a corporation. Plaintiff also acknowledges, however, that at least one of the agreements in the record explicitly states that "Pan Global Entertainment is a corporation domiciled in California," and that Pan Global Entertainment "represents and warrants that . . . it is a corporation or LLC or other entity . . . duly formed and validly existing in good standing under the laws of its state." (Answer, Ex. 1.). Although it is certainly possible that Plaintiff is correct that language was erroneous, its existence precludes a grant of summary judgment on EBAC's real party in interest defense.

**IV. Conclusion**

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.

Dated: June 30, 2020

DEAN D. PREGERSON
United States District Judge

17